UNITED STATES DISTRICT COURT
DISTRICT OF NEW HAMPSHIRE


<u>Walter V. Demers, Jr.</u>

    v.                                    Civil No. 10-cv-296-JL
                                                Opinion No. 2010 DNH 193

<u>Pilkington North America, Inc.</u>


### <u>**MEMORANDUM ORDER**</u>

Walter V. Demers, Jr. has sued Pilkington North America, Inc. to recover approximately $101,000 in rent he says it owes him under a two-year extension to a commercial lease.  This court has diversity jurisdiction over this action between Demers, a citizen of New Hampshire, and Pilkington, a Delaware corporation with its principal place of business in Ohio.  <u>See</u> 28 U.S.C. § 1332(a)(1).  Pilkington has defended itself vigorously, to say the least, by moving to dismiss the complaint for failure to state a claim for relief, <u>see</u> Fed. R. Civ. P. 12(b)(6), moving to transfer the case to the Northern District of Ohio or the District of Massachusetts, <u>see</u> 28 U.S.C. § 1404(a), and filing two separate motions to strike a single affidavit that Demers submitted in response to both of Pilkington's other motions.

This all-out strategy brings to mind Queen Gertrude's remark about protesting too much.  <u>See</u> William Shakespeare, <u>Hamlet</u>, act 3, sc. 2.  Pilkington's arguments for dismissal, which rely on

the fact that it did not itself sign the lease extension, would require this court to apply Ohio law to determine the validity of a lease for property in Massachusetts (in the absence of any choice-of-law clause to that effect), and to disregard indisputably authentic documents showing that Pilkington accepted benefits, in the form of reduced rental charges, under the very agreement it now seeks to avoid.  Pilkington's arguments for transfer ask this court to ignore Demers's choice of his home state, New Hampshire, as the forum to this lawsuit, and to move the case to fora which, while certainly more convenient for Pilkington, are no more convenient for most of the potential witnesses.  Following oral argument, all of Pilkington's motions are denied.

I.   **Background**

Demers's complaint makes the following allegations, which this court must accept as true for purposes of the motion to dismiss.  See, e.g., Gagliardi v. Sullivan, 513 F.3d 301, 305 (1st Cir. 2008).  In March 1997, Demers began renting premises in Lawrence, Massachusetts, to Pilkington's predecessor-in-interest, Auto Glass Wholesale, Inc., pursuant to a written lease.  The lease provided for an initial term of two years, followed by three additional terms of five years each at the lessee's option, to be exercised in writing.  Before assigning its rights and

2

obligations under the lease to Pilkington, Auto Glass Wholesale
exercised its option on the first two periods, extending the term
through February 2009.

In June 2008, Demers and Pilkington agreed to extend the
lease for one year, through February 2010.  In June 2009, the
parties "entered into a further extension of [the] lease for two
years," i.e., through February 2012, "which included a reduction
in the previously agreed to rent payments" for the then-current
term, i.e., through February 2010.  By March 2010, however,
Pilkington had ceased paying rent and other charges due under the
lease and moved out of the premises.

In moving to dismiss the complaint, Pilkington relies on the
document memorializing the 2009 extension of the lease, through
February 2012, pointing out that it was not signed by Pilkington
(though it contains a signature line for that purpose) but only
by one John W. Myers, whom the document identifies as "Agent for
Pilkington North America, Inc."  Pilkington asserts--relying on
"Online Lookup Details" from the "Ohio eLicense Center"--that
Myers was not its authorized agent, but simply "a real estate
broker associated with" Ohio Industrial Realty Co., Inc., a
company unrelated to Pilkington.  Pilkington also relies on the
document memorializing the 2008 extension of the lease, through
February 2010, which was signed by both Myers--identified, again,
as "Agent for Pilkington North America, Inc."--and Pilkington.

3

Neither of the extensions, nor the lease itself, contains any
choice-of-forum or choice-of-law clause.

## II.  **Analysis**

## A.  **Motion to dismiss for failure to state a claim**

Pilkington argues that the complaint fails to state a claim
against it for breaching the 2009 lease extension, because it
never signed that document.  For purposes of the motion to
dismiss, the court will accept the unstated premise of this
argument:  that the statute of frauds applies to the 2009 lease
agreement, requiring it to be signed by the party to be charged
(here, Pilkington).  Though Myers signed the document, Pilkington
argues that the complaint does not "set forth particularized
allegations" that he was "acting with the necessary authority" on
its behalf, so his signature does not amount to Pilkington's.

While "affirmative defenses, such as the failure of a
contract sued upon to satisfy the statute of frauds, may be
raised in a motion to dismiss an action for failure to state a
claim . . . for dismissal to be allowed . . . , the facts
establishing the defense must be clear on the face of the
plaintiff's pleadings."  Blackstone Realty LLC v. FDIC, 244 F.3d
193, 197 (1st Cir. 2001) (quotation marks omitted).  That is,
"review of the complaint, together with any other documents
appropriately considered under Fed. R. Civ. P. 12(b)(6), must

leave no doubt that the plaintiff's action is barred by the asserted defense." Id. (quotation marks omitted).  The materials cognizable on the motion to dismiss here, including the lease extensions, see Trans-Spec Truck Serv., Inc. v. Caterpillar, Inc., 524 F.3d 315, 321 (1st Cir. 2009), leave substantial doubt that Demers's claim is barred by the statute of frauds.

Pilkington argues that Myers was acting simply as its "real estate agent" in its transactions with Demers, and thus could not have bound Pilkington to the 2009 lease extension.  This is so, according to Pilkington, because, under Ohio law, a "real estate agent is without authority to execute a contract of sale" on behalf of his principal, "unless such authority is specifically conferred . . . .  The fact that the owner of real estate employs an agent to find a purchaser for it does not raise an implication that the agent is authorized to make a written contract with reference to it." Spengler v. Sonnenberg, 102 N.E. 737, 738 (Ohio 1913).  But, assuming that Ohio law controls the scope of Myers's agency here, but see infra note 3, and assuming further that the same limits on a real estate agent's authority apply to leases and not just sales, dismissal of Demers's claim would not follow, because the complaint and incorporated documents do not establish that Myers was merely Pilkington's "real estate agent."

To the contrary, not only the 2009 lease extension--but also the 2008 lease extension, which was separately signed by

5

Pilkington--both specifically identify Myers as "Agent for Pilkington North America, Inc."  The fact that Pilkington signed this document calling Myers its "agent" is sufficient, at this point, to cast doubt on its claim that he lacked the requisite authority.[1]  Indeed, under Ohio law, an agent can bind his principal to a lease through apparent authority, which "may be conferred if the principal affirmatively . . . , or by lack of ordinary care, causes or allows third persons to act" based on the principal's holding "the agent out to the public as possessing sufficient authority to embrace the particular act" and the third person's good-faith belief "that the agent possessed the necessary authority."  Ammerman v. Avis Rent A Car Sys., Inc., 455 N.E.2d 1041, 1045 (Ohio Ct. App. 1982) (quotation marks omitted).  Whether Pilkington did so by signing the 2008 agreement with Demers referring to Myers as the company's "agent" cannot be conclusively answered from the materials reviewable on its Rule 12(b)(6) motion.

---

[1]This fact also distinguishes this case from Camastro v. Motel 6 Operating, L.P., No. 2000-T-0053, 2001 WL 435361 (Ohio Ct. App. Apr. 27, 2001), an unpublished decision by the Ohio Court of Appeals on which Pilkington heavily relies.  There, the court affirmed the dismissal of a claim for breach of a land sale contract in the absence of "evidence that authority had been specifically conferred on [the real estate brokerage] to accept and bind" the defendant, aside from the brokerage's remarks that agreement had been reached.  Id. at *3.  Unlike this case, there was no evidence of a document, signed by the defendant, identifying the brokerage as its "agent."

Pilkington suggests that this reference means simply "<u>real estate</u> agent," so that the 2008 lease extension did not serve to enlarge Myers's authority beyond the limits generally imposed on real estate brokers.  Specifically, Pilkington relies on (1) Internet materials showing that Myers is a licensed real estate broker associated with an unrelated company,[2] and (2) the fact that both the 2008 and 2009 lease extensions contain signature lines for not only Myers's signature, but Pilkington's signature as well.  The problem with this argument--aside from the fact that the language of the 2008 lease extension expressly refers to Myers as "agent," not "real estate agent"--is that it asks this court to draw inferences that, though not unreasonable by any means, are not the only plausible ones to be drawn.

---

[2] These materials are neither attached to, nor incorporated into the complaint--and also appear to be hearsay not subject to any exception, <u>see</u> Fed. R. Evid. 801(c).  Pilkington nevertheless urges the court to take judicial notice of Myers's licensure and employment.  While judicially noticed facts may be considered in ruling on a Rule 12(b)(6) motion, <u>see</u> <u>Rodi v. S. New Eng. Sch. of Law</u>, 389 F.3d 5, 18-19 (1st Cir. 2004), Pilkington does not explain how these facts are "either (1) generally known within the territorial jurisdiction of the trial court or (2) capable of accurate and ready determination by resort to sources whose accuracy cannot reasonably be questioned" so as to be amenable to judicial notice.  Fed. R. Evid. 201(b).  With the exception of government websites and the like, the Internet would not appear to qualify as a source "whose accuracy cannot reasonably be questioned."  <u>See</u>, <u>e.g.</u>, <u>Ruiz v. Gap, Inc.</u>, 540 F. Supp. 2d 1121, 1124 (N.D. Cal. 2008).  Moreover, it is inconsistent, to say the least, for Pilkington to urge this court to consider facts beyond the complaint and incorporated documents in support of the motion to dismiss, while also urging this court to strike similar facts proffered by Demers in opposition to the motion.  That inconsistency is discussed <u>infra</u>.

While the fact that Myers works as a real estate broker could imply that his authority to act for Pilkington was limited accordingly, it does not rule out that he had greater responsibilities for the company, including the power to enter into leases on its behalf.  Similarly, while the fact that both Myers and Pilkington signed the 2008 lease extension could imply that Myers's signature alone was insufficient to bind Pilkington, there are other plausible explanations, e.g., that Pilkington's signature was necessary only to manifest its assent to the provision that Myers not receive any commission on the deal. "[D]ismissal for failure to state a claim is appropriate only if 'the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct.'  It is not appropriate in the opposite case, i.e., if the complaint simply permits (but does not compel) the court to infer that the defendant acted lawfully."  Kmart Corp. v. R.K. Hooksett, LLC, 2010 DNH 030, 6 (quoting Ashcroft v. Iqbal, 129 S. Ct. 1937, 1949 (2009)).

Pilkington also argues that, regardless of Myers's authority, Demers "does not (and cannot) allege" that Pilkington conveyed that authority in writing.  That omission, Pilkington says, is fatal to Demers's claim under the Ohio statute of frauds, which does not permit an agent to bind his principal to a contract for an interest in land without written authority to that effect.  See Ohio Rev. Code Ann. § 1335.04; Hodesh v.

8

Hallerman, 186 N.E. 921, 923 (Ohio Ct. App. 1933).  But there are at least two problems with that argument as a basis for dismissing Demers's complaint.

First, Pilkington has not established that the Ohio version of the statute of frauds applies here.  "The validity of a contract for the transfer of an interest in land," including a lease, is "determined by the local law of the state where the land is situated."  Restatement (Second) of Conflict of Laws § 189 & cmt. *b* (1971).  For choice-of-law purposes, the "validity of a contract" includes its compliance with the statute of frauds.  See id. § 141.  Here, the leased premises were located in Massachusetts, which--unlike Ohio--does not require an agent to have written authorization to bind his principal to a contract governed by the statute of frauds.[3]  See Evans, Coleman & Evans v. Pistorino, 139 N.E. 848, 851 (Mass. 1923); Record v. Littlefield, 106 N.E. 142, 143 (Mass. 1914).

---

[3]Pilkington relies on § 292(1) of the Restatement, which provides that "[w]hether a principal is bound by action taken on his behalf by an agent in dealing with a third person is determined by the local law of the state which, with respect to the particular issue, has the most significant relationship to the parties and the transaction."  But under the second clause of that section, § 292(2), "[t]he principal will be held bound by the agent's action if he would so be bound under the local law of the state where the agent dealt with the third person."

Thus, even if § 292 (rather than § 189) controls the question of what law governs whether or not Myers needed written authorization to bind Pilkington--an issue the court need not decide at this point--Ohio law still would not apply unless that was the place where Myers dealt with Demers.  At oral argument, Pilkington conceded that those dealings did not occur in Ohio.

Second, even if the Ohio statute of frauds applied, that
state follows the rule that "an oral lease will be taken out of
the statute of frauds by partial performance."  McCarthy, Lebit,
Crystal & Haiman Co., L.P.A. v. First Union Mgmt., Inc., 622
N.E.2d 1093, 1100 (Ohio Ct. App. 1993).  To obtain this result, a
plaintiff must show detrimental reliance, i.e.,

> such acts and conduct of the defendant as the court
> would hold to amount to a representation that he
> proposed to stand by his agreement and not avail
> himself of the Statute to escape performance; and also
> that plaintiff, in reliance on this representation, has
> proceeded, either in performance or pursuance of his
> contract, so far to alter his position as to incur an
> unjust or unconscientious injury and loss.

Brannan v. Fowler, 654 N.E.2d 434, 438 (Ohio Ct. App. 1995)
(quotation marks and citations omitted).

In response to the motion to dismiss, Demers has submitted
an affidavit stating that Pilkington "began paying the reduced
rent effective August 1, 2009 as set forth in the [2009] lease
extension."  The affidavit also attaches checks to Demers from
Pilkington that reflect its payment of $4,952.51 for the July
2009 rent, and reduced payments of $4,219.59 for each of the
three months thereafter, i.e., beginning August 2009.[4]  At a
minimum, these materials call into question whether the doctrine
of partial performance prevents Pilkington--which appears to have

---

[4]The 2009 extension provides for a 15% reduction in the base
rent that would otherwise be due for the period between August 1,
2009 and February 28, 2011.

availed itself of the benefits of the 2009 lease extension, to Demers's detriment, by paying less rent than would have been owed absent the extension--from invoking the statute of frauds to invalidate that agreement.  See McDermott v. McDermott, No. 02-203, 2003 WL 21040657, at *2 (Ohio Ct. App. May 9, 2003) (ruling that, where defendant "received and benefitted from a substantial amount of money" under his loan agreement with plaintiffs, the doctrine of partial performance prevented him from invoking the statute of frauds as a defense to the agreement).

Pilkington argues that the court should disregard Demers's affidavit and the attached checks in ruling on the motion to dismiss and, indeed, moves to strike these materials, because "the only facts appropriate for consideration in deciding a motion to dismiss are those drawn from factual allegations contained within the Complaint or within exhibits attached to the Complaint."  But Pilkington's own arguments for dismissal depend almost entirely on materials that do not fit either of those descriptions, including copies of the lease extensions and other documents that were not appended to the complaint, as well as copies of on-line materials, see note 2, supra.

In trying to wriggle out of this awkward position, Pilkington says that the court can consider the agreements on which it relies as "central to [Demers's] claim"--which is correct--but not the checks, to which the complaint "contains no

11

express or implied reference"--which is incorrect and, for that matter, irrelevant.  The complaint expressly alleges that the 2009 lease extension "included a reduction in the previously agreed to rent payments," which would seem to count as at least an "implied reference" to the payments themselves.  In any event, a court ruling on a motion to dismiss may consider not only "documents central to [the] plaintiffs' claim" and "documents sufficiently referred to in the complaint," but also "documents the authenticity of which are [*sic*] not disputed by the parties." Watterson v. Page, 987 F.2d 1, 3 (1st Cir. 1993).  That includes the checks:  they are self-authenticating, see Fed. R. Evid. 902(9), and Pilkington does not question their provenance.

So, even if Pilkington is correct that the court must ignore Demers's affidavit in ruling on the motion to dismiss,[5] the court

---

[5]This could be correct only as a highly technical matter. Demers's submission of his affidavit would allow the court to treat Pilkington's motion to dismiss as a motion for summary judgment, see Fed. R. Civ. P. 12(d), which would be denied, at least based on the materials presently before the court.

Or the court could treat the affidavit as an amendment to the complaint, which Demers was entitled to file as of right, see Fed. R. Civ. P. 15(a)(1)(B), and which would cure any deficiency asserted by Pilkington's 12(b)(6) motion, as just explained. While Pilkington argues that "Plaintiff may not seek to amend his Complaint through his Opposition or by submitting an affidavit," the cases it cites do not stand for that proposition.  Car Carriers, Inc. v. Ford Motor Co., 745 F.2d 1101, 1107 (7th Cir. 1984), does state, "it is axiomatic that the complaint may not be amended by the briefs in opposition to a motion to dismiss," but says nothing about affidavits.  And even the statement about briefs is open to serious question--at least if it means, as Pilkington argues, that factual statements therein cannot be treated as amendments to the complaint--because the same court

could still consider the attached checks, which themselves

suffice to show partial performance under the 2009 lease

extension and, in turn, to negate any statute of frauds defense,

at least at this stage of the litigation.  Accordingly,

Pilkington's motion to dismiss is denied, and its motion to

strike the materials submitted in opposition is denied as to the

checks, and denied as moot as to the affidavit itself.  (Of

course, even if the motion to strike were granted in its

entirety, Pilkington's motion to dismiss would still fail,

because the complaint and lease extension documents themselves

make out a plausible claim for breach of contract, for the

reasons just explained at length.)

_____

has since repeatedly held to the contrary.  See, e.g., Help at
Home, Inc. v. Med. Capital, L.L.C., 260 F.3d 748, 752-53 (7th
Cir. 2001); Hrubec v. Nat'l R.R. Passenger Corp., 981 F.2d 962,
963 (7th Cir. 1992); Early v. Bankers Life & Cas. Co., 959 F.2d
75, 79 (7th Cir. 1992).  Nor does this court's decision in Dillon
v. Select Portfolio Servicing, 2008 DNH 019 (McAuliffe, C.J.),
stand for Pilkington's so-called "axiomatic" proposition.  There,
in response to Rule 12(b)(6) motions, the plaintiff announced he
was "prepared to offer a more definitive statement" supporting
his claims "if the court deems it necessary or helpful."  Id. at
15.  The court opined that this "proposed negotiation . . . falls
outside the process described by the Federal Rules of Civil
Procedure."  Id. at 15-16.  So the case does not suggest that
when a plaintiff, like Demers, responds to a motion to dismiss by
coming forward with materials supporting his claim--rather than
merely threatening to do so--the court must ignore them.

**B.   Motion to transfer**

In addition to moving to dismiss this case, Pilkington has also moved to transfer it to either the Northern District of Ohio--Pilkington's home district--or the District of Massachusetts.  "For the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district . . . where it might have been brought."  28 U.S.C. § 1404(a).  In deciding whether to transfer a case under § 1404(a), courts consider a number of factors, including the convenience of the parties and witnesses, Coady v. Ashcraft & Gerel, 223 F.3d 1, 11 (1st Cir. 2000), as well as where the events at issue in the litigation took place and the public interest in having local controversies adjudicated locally, CFTC v. Cromwell Fin. Servs., 2006 DNH 019, 5-6.

The burden of justifying a transfer under § 1404(a) rests with the party seeking it, and "there is a strong presumption in favor of the plaintiff's choice of forum."  Coady, 223 F.3d at 11 (citing Gulf Oil Corp. v. Gilbert, 330 U.S. 501, 508 (1947)).  Pilkington has not overcome that presumption here, or otherwise justified transferring the case to Ohio or Massachusetts.

Pilkington argues that Demers's "choice of forum is not entitled to weight because there is little, if any, connection between the facts of this case and New Hampshire."  As this court has observed, though, a "plaintiff's choice of forum must be

14

given some weight," even if "the factual center of [the] case"
lies elsewhere.  Buckley v. McGraw-Hill, Inc., 762 F. Supp. 430,
440 (D.N.H. 1991); see also, e.g., 15 Charles Alan Wright et al.,
Federal Practice & Procedure § 3848, at 144-150 (3d ed. 2007) (to
override the plaintiff's choice of forum, "it is not enough
merely to show that the claim arose elsewhere") (footnote
omitted).  After all, Demers resides in New Hampshire, which
creates a sufficient nexus with this forum to accord his choice
at least some weight.  See Sousa v. TD Banknorth Ins. Agency,
Inc., 429 F. Supp. 2d 454, 457 (D.N.H. 2006) (noting that
plaintiff "has chosen to bring this action in her home state
. . . there is a strong presumption that her choice of forum
should not be disturbed") (citing Coady, 223 F.3d at 11).

 Nevertheless, it is true that if "the operative events did
not take place in the plaintiffs' chosen district," then "courts
generally place less importance on this factor . . . even where
one of the plaintiffs resides there."  Cromwell Fin. Servs., 2006
DNH 019, 10.  But the situs of the operative events in a lawsuit
generally bears on the transfer decision only insofar as it
impacts the other factors, such as the location of witnesses and
evidence.  See id. at 11; 17 James Wm. Moore, Moore's Federal
Practice § 111.13[1][d][i], at 111-71--72 (3d ed. 1997).  And, as
this court has observed, "[t]he most important factor in deciding

whether to transfer an action is the convenience of witnesses."
Buckley, 762 F. Supp. at 440.

Here, many of the operative events took place in
Massachusetts, but at least some witnesses to those events are
located in New Hampshire:  Demers lives here, of course, and he
says that "any persons with relevant information and evidence"
formerly located at the leased premises in Lawrence,
Massachusetts "are now located at [Pilkington's] facility in
Salem, New Hampshire," where Pilkington moved its operations.[6]

Pilkington insists, relying on an affidavit from its
facilities manager, that its "employees and documents relevant to
this action are now (and have always been) located in Ohio, not
in New Hampshire."  The affidavit actually says, however, that
all of the Pilkington "individuals with knowledge of the Lease

---

[6]Pilkington has moved to strike this statement, arguing that
Demers lacks personal knowledge of "who in [its] employ has
information relevant to [his] claim, let alone where [Pilkington]
keeps documents relevant to his case."  But Demers does not
purport to know those facts--only that Pilkington moved its
operations from his property in Lawrence to a different facility
in Salem, taking all of its personnel with it.  As Pilkington's
landlord at the time of the move, Demers would seem to have
personal knowledge of that.  Pilkington does not argue otherwise.

Pilkington's real point seems to be that Demers does not
know that those personnel have any information relevant to this
case.  That may be correct (though hardly surprising at this
stage of the litigation, before there has been any discovery),
but it does not support the motion to strike and is ultimately
unhelpful to the motion to transfer as well.  As explained infra,
it is certainly reasonable to assume at this point that at least
some of the Pilkington employees in Salem who previously worked
at the Lawrence facility have some relevant knowledge.

Extensions, and all of [its] documents that relate to the Lease
Extensions, are located and were executed in Ohio" (emphasis
added).  But while the extensions themselves are centrally
important to this case, they do not define the limits of its
potentially relevant evidence.

Pilkington employees formerly at the Lawrence site, and now
in New Hampshire, may well possess other discoverable
information, such as knowledge of communications--whether among
themselves or with Demers--about the status of Pilkington's
lease.  In contrast, Pilkington does not identify any of its Ohio
employees with relevant knowledge, or elaborate on what they
know, and such "conclusory allegations of unnamed witnesses [are]
insufficient to meet [the] movant's burden" to transfer.[7]
Buckely, 762 F. Supp. at 440 (citing Omni Hotels Mgmt. Corp. v.
Round Hill Devs. Ltd., 675 F. Supp. 745, 752 (D.N.H. 1987)).

Thus, although there are likely some potential witnesses
located in Pilkington's employ in Ohio, this is not a case where,
aside from the plaintiff, "[v]irtually all other material
witnesses live in" the proposed transferee district so as to
justify moving the case there.  Cf. Adam v. Haw. Prop. Ins.

---

[7]The location of the lease extensions themselves (and any
other related documents) "deserves little weight" in the transfer
analysis, "given the ease of preparing and transmitting exhibits
with contemporary technology."  Cromwell Fin. Servs., 2006 DNH
019, 11 n.7.

Ass'n, 2005 DNH 048, 10.  And Pilkington does not identify <u>any</u>

potential witnesses in its other proposed transferee district,

Massachusetts.  Pilkington relies heavily on the fact that Myers,

whom it calls "[t]he key witness in this matter," resides in

Ohio, which would "clearly have jurisdiction over both Myers and

Ohio Industrial," his employer, and further argues that

"Massachusetts would also be able to exercise jurisdiction over

Myers and Industrial based on their communications and dealings

with" Demers.  But Pilkington does not explain why personal

jurisdiction over Myers or Ohio Industrial--who are not parties

here--should factor into the transfer analysis.[8]

---

[8]In a footnote in its reply memorandum, Pilkington states
that Myers "does not have contacts with New Hampshire sufficient
for it to compel him to testify here," and points out that this
court's inability to compel the live testimony of a witness at
trial cuts in favor of transfer to a court that has that power,
<u>see</u> <u>Beland v. Dep't of Transp.</u>, 2001 DNH 042, 9-10.  This court
ordinarily disregards arguments raised for the first time in
reply.  <u>See</u> <u>Doe v. Friendfinder Network, Inc.</u>, 540 F. Supp. 2d
288, 303 n.16 (D.N.H. 2008).  In any event, unlike personal
jurisdiction, a court's subpoena power does not depend on the
witness's "contacts" with the forum state, but whether he is
amenable to service under Rule 45(b)(2), and Pilkington does not
address whether that rule would reach Myers in either Ohio or
Massachusetts.
    Moreover, "the party relying on the unavailability of the
non-party witnesses in one of the respective forums should
provide the court with specific information as to their
unwillingness to testify" voluntarily, i.e., without the need for
a subpoena.  17 Moore, <u>supra</u>, § 111.13[1][f][iii], at 111-81.
Pilkington has not even suggested that Myers would be unwilling
to testify in this action without a subpoena.  Indeed, it would
be surprising if he were, since, according to Pilkington, Myers's
employer "was hired by [Pilkington] to locate properties for [it]
to lease or purchase throughout the United States"--a potentially
lucrative business arrangement which Myers would seem to want to

To be sure, it would be more convenient for Myers, as well as any potential witnesses employed by Pilkington at its headquarters in Ohio, to testify in the Northern District of Ohio as opposed to the District of New Hampshire--but it would also be more convenient for Demers, as well as any potential witness employed by Pilkington at its location in Salem, to testify here. The convenience of the witnesses, then, does not cut decisively in favor of transferring the case to Ohio (or, for that matter, Massachusetts).  See Sousa, 429 F. Supp. 2d at 457.

Pilkington also has not shown that any of the remaining factors to weigh in favor of either of its proposed transfers. As just noted, it would be just as inconvenient for Demers to prosecute this action in Ohio as it would for Pilkington to defend it here, and no more convenient for Pilkington to defend this action in Massachusetts than to defend it here.[9] If "the plaintiff resides in the chosen forum and the defendant resides in the proposed transferee district, one or the other unavoidably will be inconvenienced," so "generally the weight given the

---

preserve, even by inconveniencing himself by serving as a witness in this matter in a New Hampshire court.  At oral argument, Pilkington said simply that it had "no idea" whether Myers would testify willingly in this action.

[9]Pilkington points out that counsel of record for both it and Demers are located in Massachusetts, but "[t]he convenience of the parties' counsel is given little or no weight."  17 Moore, supra, § 111.13[1][f][iii], at 111-81.  Anyway, lawyers from Massachusetts routinely appear in this court at no great inconvenience to themselves or their clients.

19

plaintiff's choice of forum will tip the balance against transfer."  17 Moore, supra, § 111.13[1][e][i], at 111-74.

Pilkington argues that the law to be applied in this case favors transfer as well, because "Massachusetts law would apply to the breach of contract analysis" and "Ohio law will apply to the agency analysis."  While this court has recognized "the benefits of having a trial in a forum that is at home with the state law that must govern the case," it has also observed that "courts in New Hampshire are familiar with Massachusetts law," so that the application of that state's law hardly necessitates transferring a case from here to there.  Sousa, 429 F. Supp. 2d at 458 (quotation marks omitted).  And Pilkington has not shown that Ohio law will apply to any aspect of this case, as already discussed.  See note 3 and accompanying text, supra.

Because Pilkington has not carried its burden to show that transferring this case to either Ohio or Massachusetts would serve the convenience of parties and witnesses or the interest of justice under § 1404, its motion to transfer is denied.  Its motion to strike the affidavit Demers submitted in opposition to the transfer motion is also denied.  See note 6, supra.

III. **Conclusion**

For the foregoing reasons, Pilkington's motion to transfer[10] is DENIED, its motion to dismiss[11] is DENIED, and its motions to strike[12] are DENIED.


SO ORDERED.

_____
Joseph N. Laplante
United States District Judge

Dated:  November 10, 2010

cc:  Bryan J. Kerman, Esq.
     Courtney Worcester, Esq.

---

[10]Document no. 6.
[11]Document no. 7
[12]Document nos. 13, 15.

21